I would like to focus this morning on the two entrapment issues that were presented in our briefing. The denial of the sentencing entrapment instruction by the District Court and the modification of the Ninth Circuit pattern entrapment instruction by the District Court. Starting with the sentencing entrapment argument, in motions in Limine, Mr. Cortes moved the District Court to allow him to present a sentencing entrapment argument to the jury. The District Court denied that request saying that the only quantity issue in the case that would go to the jury was whether the conspiracy involved more or less than the five kilograms that was alleged in the indictment. I think there's essentially two components to this question. Number one, is sentencing entrapment a question that ever should go to a jury? And number two, did the facts of this particular case support a presentation of that defense to the jury? No Circuit Court anywhere in the country has ever answered that first question. Courts have discussed the issue, but no court of appeal has squarely addressed whether post-apprehendee sentencing entrapment is a question for the jury. This court in a couple of unpublished opinions has touched upon the issue. The Longo case, the District Court found that the defendant should have been able to present that defense to the jury, and the panel said that they did not doubt that that was the correct application of law. And then, of course, in the Williams case, Judge Silverman, in his dissent, clearly said that we've held that drug types and quantities triggering higher statutory maximum sentences are jury questions under apprendee, so too are defenses to these types and quantities. And so it's beautiful, really. It's very well said. It's brilliantly stated, but it's a little cryptic, so maybe you could fill it out for us here. In this case, the sentence apprendee kicks in when it affects the statutory maximum, correct? Exactly. Okay, so in this statute, you have two potential maximums depending on drug quantity, correct? Correct. Okay, so what was the instruction that you were asking for? Because the cutoff is five kilograms. The instruction... So you were asking the jury to do what? We were asking the jury to be able to determine if Mr. Cortez had the ability to deal in the amount of drugs that were suggested as part of this team, which was... Well, the charge was 100 kilograms, right? Exactly. Okay, so was the instruction going to be that it was... they had to find that he had to handle more than five kilograms? The instruction was that if you find that Mr. Cortez did not have the ability to acquire the amount of drugs charged in the indictment, which was the five kilograms, then you should find that that quantity is not met. No, 100 kilograms. He was charged with 100 kilograms, right? Correct. And we tailored the instruction to say that if you think that he was not able to deal in that amount or the five kilograms, that you should find that the quantity element or determination is not met. And so... I'm still unclear. Are you... the instruction would have been... was there an instruction proposed? Yes, there were two instructions proposed. What did they say about the amount? I don't know. I will tell you exactly what they said. The first instruction said, if the government fails to prove beyond a reasonable doubt that Mr. Cortez was reasonably capable of purchasing five or more kilograms of cocaine, then you cannot return a finding that the applicable quantity of cocaine for count two... it was actually count one... was five or more kilograms. Okay. And so the amount suggested as part of the scheme was 100, but we focused on this instruction with the five kilogram threshold that was in the indictment. If we agree with Judge Silverman and say that this is an issue that can go to a jury, the question then becomes, was there sufficient evidence in this case for the district court to present that evidence to the jury? And I think the court's order last week talking about the instruction or the case of Yuman Hernandez is illustrative in some ways as to that issue. Yuman had a different posture. Yuman Hernandez was a sentencing issue where the burden was on the defendant to establish that the court should have departed for sentencing entrapment. Of course, in this case, it was a jury instruction issue with Mr. Cortez arguing that the district court should have given the jury an instruction as to sentencing entrapment. So the posture is different, but Yuman Hernandez is helpful in terms of discussing what a defendant needs to show in the first place to establish sentencing entrapment. Do you have to show just that he wasn't capable of dealing in the amounts, or do you have to show in this instance that he was only going to rob stash houses with less than five kilos of drugs? Because in this case, it's not just a pure case of dealing, it's a case of robbing a stash house. Exactly, and Yuman Hernandez says to get to that threshold, you can either show a lack of intent or, I'm quoting from the case, a lack of capability to conspire with others to take the amount of cocaine involved in this case by force. And I think Mr. Cortez introduced sufficient evidence as to both prongs to merit the instruction. There's zero evidence in this case other than Mr. Cortez's boasts at the first meeting tying Mr. Cortez to either robberies or drugs. Even assuming that he was predisposed to rob, it's inconceivable to think that somebody would know where to go and find a stash house with any drugs, much less five kilograms of drugs or 100 kilograms of drugs. And so when the court issued the order asking to what extent, what evidence would Mr. Cortez have produced to show the lack of capability, there were several areas he could have gone into to establish that. First of all, he could have gone into it more in his testimony. Mr. Cortez testified at trial, and what he testified to was, I've never been in trouble before, which is true. I work full time, which is true and was established. I've never robbed anyone before. The government disputes that, but that's what he said. And I've never used drugs, possessed drugs, trafficked in drugs, or had any connection to drugs. And so Mr. Cortez's testimony focused on that issue. If it had been, if the door had been kept open by the district court, would have given the jury very strong evidence that he had no predisposition whatsoever to be able to go out, find the stash house with cocaine or drugs, and then rob that stash house. There, we would have introduced evidence showing that there was no physical evidence tying Mr. Cortez in any way, shape, or form to drug trafficking or to robberies. Nothing found on his purse, nothing in his vehicle, nothing in his home. Again, no connection at all to robberies, and even less of a connection to drugs or to cocaine. Let me ask you about the Spence issue, if I may. Sure. Judge Benitez lifted some language out of this case and added it to the instruction. And I've got to admit, it's hard to really understand what Spence is getting at there. At least I have a hard time wrapping my mind around it. But in fairness to Judge Benitez, I mean, he quoted it verbatim. He did. Judge Benitez thought Spence was on point. And Spence certainly did. It was a stash house case, same agent as in this case on his parade of stash house setups around the nation. The problem with Spence is it's directly in conflict with prior cases of this court. I think the best case for us is Sotelo Murillo, where the panel explicitly held that the for-profit motive and the profits of the crime are exactly the sort of inducement that should count in the calculus. We studied Kessy as well, which said the same thing. Garza Juarez, which, while not as strong, went along the same lines. We lack the capability of overruling the case, so how do you suggest we reconcile it? I think you reconcile Spence with those other cases by the fact that Spence dealt and cited sufficiency cases. Spence cited cases that only dealt with Jacobson, Sherman, Jones, Pullman. Those were all cases dealing with entrapment as a matter of law claims. And I think maybe how we can harmonize Spence and Kessy, Sotelo Murillo, and the other cases is to say that perhaps the profit or the proceeds from a crime might cut out entrapment as a matter of law claim if that's the only basis for inducement. But again, pursuant to Sotelo Murillo and Kessy, if we're looking at a basket of inducements, and in this case we had that basket in terms of the government's personal appeal, the way they set this whole thing up in the first place, taking something from a criminal, and the potential profit from the crime, that the potential profit is an important component of the inducement. And to knock that out in a case like this where even the government said there's a basis for the instruction is to contradict the prior cases of this Court. So I think we can harmonize those two by looking at Spence as sort of a sufficiency analysis and looking at the other ones in terms of whether the instruction in the first place is appropriate. Suppose Judge Benitez had said, It is not entrapment if a person is tempted into committing a crime solely on the hope of obtaining ill-gotten gain because that's the motive of a lot of crimes. But the jury can consider whether a person was induced by all the factors that the jury can consider, including whatever pressure, whatever promises. Would that have been a way to harmonize it? That would have been closer, I think, yes. Closer to what the prior cases of this Court have held. But I think any instruction that excludes the proceeds of the crime and the pecuniary motive in the case, I think any instruction that excludes that is, I think, crossing over and contradicting those prior cases. Again, when there's several... I would understand Spence, to try to make sense of Spence, to mean that Spence applies in the circumstance where somebody is tempted to commit a crime solely because of what he hopes to get out of the crime, without any consideration of any other kinds of inducement. I think that's what Spence, the panel in Spence, was getting at. And I think in that case, it's a different analysis. In this case, again, we had at least three or four different kinds of inducement. One of those was the proceeds of the crime. And I think we have these several different types of inducement that the jury should consider all of them. And I raise, sort of as an attachment to that, the due process argument, where the Supreme Court has looked at these sorts of entrapment cases and said, the court and the jury need to consider all of the facts, all of the elements, all of the factors in the case to decide if the government's behavior would cross the line or not. And I think if we're going to cut out, as a matter of law, the proceeds of the crime, when many times that's the best hook that the government has to create a crime, that we're going to short circuit any sort of due process constitutional analysis, as well as not give the jury the information it needs to really decide if someone was predisposed and ready to do the crime or if the carrot that was hung out in front of him was too well constructed by the government. So that's, I think, how you harmonize those two positions. You're under two minutes. Do you want to reserve? Yes, sir. Please. Good morning. Tim Coughlin for the United States. I'd like to start with where the court ended, which was discussing the Spence case. First, that was a ruling by this court. The language that the district court took was directly from that ruling. Essentially, that didn't, in this particular case, limit the argument that was made by Mr. Bircham in his closing. He actually included the inducement of the proceeds or the particular boilerplate crime, as he called it, which was the hundred kilos of cocaine. He then went on to argue these additional factors, which had to do with, in his particular case, his friendship with one of the other co-conspirators, as well as some relationship he stated, he testified that he had formed with the undercover agent. The instruction that the judge added was the amount of drugs or the profit that would be derived from their sales does not constitute an inducement supporting a traffic. Right. What does that mean? It's implicit in that that it alone doesn't constitute. And I think that Mr. Bircham, in his own argument, in closing, actually referenced the fact that he talked about part of the inducement certainly was the proceeds, but he also talked about these additional factors. So it was not, the jury was not misled to say, well, you can't consider this at all. And Mr. Bircham, in his own closing, argued those particular facts. So I don't really think that what Spence holds is that it is the proceeds, you throw it out the window, don't consider it at all. It's that opportunity plus something else. And I think the three cases that counsel talked about, the Sotelo Murillo case, the Garza Juarez case, and the Kesey case, I think a close analysis of all three of those cases will show there actually was a plus factor in each one of those. For example, in the Sotelo Murillo case, that's an older case, and I think this court has been grappling with these ATF sting operations for some time, trying to refine the way it looks at it. But in that particular case, we had an undercover transaction that occurred in which an informant met with an old friend, somebody he'd known for 35 years. Mr. Sotelo Murillo testified, this informant owed me a debt, and the only reason I became involved in this drug transaction, this heroin deal for a minor amount of heroin, was so that I would down the road be able to recoup that debt. That's the opportunity plus, the government would argue, is exactly what Spence is talking about. Not only the proceeds from the crime itself, which in Sotelo Murillo was the heroin transaction, but this additional factor, and in Sotelo Murillo, the additional factor was the opportunity, at least he testified to that fact, that he would get that. I think important for the court in this particular case, the Cortez, was that when it came to jury instructions, the government agreed. An entrapment instruction was appropriate, but the entrapment instruction itself had to evidence what the new case Spence held. What do you think of that language I read to Mr. Burcham, if the instruction had said, it is not entrapment if a person is tempted into committing a crime solely on the hope of getting ill-gotten gain, but the jury can then consider all the other inducements? I think that the model jury instruction in this particular case is effusive on the opportunity to talk about the various inducements in addition to this language that Spence quotes. I don't think that language is necessary. I think the language, as it was taken directly from the Spence case, just as the court has read right here, was sufficient to apprise the jury that in addition to the proceeds from the crime, these other factors had to be there in order to find inducement. Although I understand what the court is asking, I don't really think it was necessary, and it certainly wasn't necessary in the arguments that Mr. Burcham made in his closing. He referenced the inducement angle of the proceeds as well as these other factors. I can supplement the record, if the court would like, as to his argument. It's not in the excerpts. Supplement the excerpts. It's not there right now, but I can certainly do that as to his closing argument to show that he referenced those, and he had no misnomer, in fact. I'd like to move on and talk briefly about the sentencing entrapment issue and Human Hernandez as a case that could be relevant. First, I think it actually supports the government's premise that sentencing entrapment is not a jury question. First of all, in Human Hernandez, it was a bench trial, and in that particular case, sentencing entrapment does not go to guilt or innocence. If you begin to look at sentencing entrapment as a jury question, all kinds of problems begin to arise, and the first problem is in connection with what is the standard that should be used to give this question to the jury so that it comes out right. In Human Hernandez, that wasn't a jury question at all. It was a sentencing question. The second thing is ---- Let me ask you this. Is it true that in a trial where the quantity is at issue, that it is a jury question to decide the quantity? Absolutely, and we had a special verdict form in this case. Okay. Well, if you buy that premise that it's a jury question, why is it not logical that any defense to that, including entrapment, should be put to the jury? It's not logical because the reason that the particular quantity under Apprendi and Buckland is relevant is because it changes the statutory max, and therefore the Supreme Court has held that kind of question needs to go to a jury. When you begin to raise sentencing entrapment to be a jury question, then you're talking about guilt or innocence. And sentencing entrapment, as we all know, means I was predisposed to commit one crime. Somehow the government induced me to take a step and commit a greater crime with greater punishment. That's not what we had here in Cortez. Cortez is not the case in which sentencing entrapment should be considered as going to the jury as a jury question. I'm not saying that that will never happen, but in this case the facts don't support it. There's no question Mr. Cortez, from the moment he was recruited by a co-conspirator, not the government, by a co-conspirator, he stepped up and began discussing with the undercover agent all the various things that were important if you were going to do a stash house robbery. Now I understand Mr. Bertram said that was all stuff he made up, and when he testified he said, I didn't mean any of that. I don't have any experience. But you know what? When he had the conversation with the undercover agent on August 24th, he was very explicit. He said, I have a crew, 12 people. They're experienced. You know what we have to do? We have to take the markings off the cocaine. Who came up with the amount? Who put that in play? The amount in this particular case was proposed by the undercover agent. It was 100 kilograms. Well, why doesn't that get his foot in the door? He may or may not prevail. Well, in this particular case, because the statutory max is five, that was what the special verdict form asked the jury to consider. Was it five or more? Whether or not there should be a reduction under sentencing entrapment theory at sentencing time is a judge question, and Judge Benitez considered that. He went below the guidelines in this case. The guideline range in this case was 352 months. In this particular case, if you do the math under the guidelines, he actually got the sentence that would be appropriate for somebody who just did five kilos, and that is a level 32 plus four for his role, which puts him at a level 36, and that's over 180 months. In this particular case, he got 180 months. So if you do the math on the guidelines alone, that doesn't include acceptance or responsibility, he's actually just held accountable for five kilograms alone. So this is not the case in which sentencing entrapment is considered as a jury question. There may be a case at some point, but this is not the case, and I don't think the Yuman Hernandez case supports that. In this particular case, I think what's interesting about that case is it supports the district court's decision in Cortez to deny the proposed jury instruction that was made on sentencing entrapment. You questioned Mr. Burcham about that particular instruction. In that instruction, Mr. Burcham talked about you had to find that Mr. Cortez was capable of purchasing five kilograms or more, or that he was capable of distributing five kilograms or more. In this particular case, Yuman Hernandez says, you know what, this is such a different type of case, these stash house robberies, we've got to look at it in an entirely different way. So they threw that whole way of looking at sentencing entrapment out the window, and they said in these types of cases, the cases in which we have a stash house robbery, this is how we have to look at it. Did he have the intent to commit the crime? Did he have the capability to commit the crime? And on both of these answers, contrary to what Mr. Burcham said, Mr. Cortez demonstrated both. He walked in the door the very first time he met the undercover agent, and he started talking about the fact that he had a crew, they were experienced, this is how we're going to do it, this is what I want you to do when you approach the stash house. In addition to that, with regard to capability, he talked about the fact that it was not going to be a problem for him to distribute the cocaine once they had it in his possession. They talked about splitting, Mr. Cortez talked about splitting the cocaine 50-50. And so there's really no question on both those factors that are listed in the Yuman Hernandez case. Sentencing entrapment, he wouldn't even get sentencing entrapment if Judge Benitez had had that case before him when he considered sentencing entrapment for Mr. Cortez. But in terms of being a reasonable sentence, the 240-month sentence in this particular case is completely reasonable. Any other questions with regard to anything? I think we have your argument at hand, so thank you very much. Just a couple of points in response, Your Honors. Mr. Cogler noted that I mentioned the fact that there were proceeds in my closing argument as this Court has held arguing something without a jury instruction to buttress that argument is of little value. That's from the Escobar-DeBride case cited on page 47 of my brief. Regarding Yuman, an important thing to take from Yuman Hernandez is the fact that Yuman Hernandez was a drug dealer. Yuman Hernandez, there was evidence in the case that Yuman Hernandez had been trafficking drugs prior to the ATF sting. There was evidence that the co-defendants in that case were drug traffickers. And so Yuman Hernandez was a sting that was against the right people, drug traffickers. That's exactly, I think, what the government is trying to do with these ATF stings. In this case, the sting was against a bunch of guys who were not drug traffickers and against Mr. Cortez, who was neither a drug trafficker nor a robber. And so to try to equate Yuman Hernandez factually with this case is not fair because Mr. Cortez did not have the criminal background that the defendants had in Yuman Hernandez. Finally, I put this in my opening brief, my reply brief. There was no crew. There was no Cortez crew. He knew a couple of the guys that were there. There was no experience from Mr. Cortez. When they got closer to the end of this and he realized what was going on, he told the agent, you need to talk to someone else about this. I don't have the experience. He said a bunch of stuff on the 24th of August that currently has him doing 20 years in prison without ever having any sort of problem before. He's 35 years old. He's a construction worker. He came here legally. He works hard to support his family. Maybe these cases sometimes get the right people, but in this case it got the wrong people, and it certainly got the wrong person. And Mr. Cortez, I think there's several bases to reverse the convictions in this case, and we ask this court to do so. Thank you, Counsel. Thank you. The case will certainly be submitted for decision. And we'll hear arguments, United States v. Johnson and United States v. Warren.
judges: Thomas, Silverman, Fisher